Luis L. Biamón, Petitioner, *v.* Tax Court of Puerto Rico, Respondent.

No. 2. Argued January 17, 1944.—Decided July 12, 1944.

*Brown, González & Newsom,* and *Enrique Córdova Díaz* for petitioner. *M. Rodríguez Ramos, Acting Attorney General,* and *M. Velázquez Flores, Deputy Attorney General,* for intervener, Treasurer of Puerto Rico.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

This is a certiorari proceeding instituted pursuant to the provisions of §5 of Act No. 169 of May 15, 1943, creating the Tax Court of Puerto Rico.

The essential facts, which are admitted by both litigants, are the following:

On March 15, 1941, the petitioner Dr. Luis L. Biamón and his wife, who are citizens of Venezuela and residents of Guaynabo, P. R., filed separate returns as husband and wife on their respective incomes during the year ending December 31, 1940, and on that same date they paid the tax upon the amount of the income stated in said returns. The returns were filled in accordance with the Income Tax Act then in force.

On August 18, 1941, the Treasurer of Puerto Rico sent to the petitioner a demand and notice, notifying him that his return had been reliquidated in accordance with the provisions of Act No. 31 of April 12, 1941, and Act No. 159 of May 13, 1941, by virtue of which the Income Tax Act was amended with retroactive effect from January 1, 1940. Upon making the reliquidation, the Treasurer consolidated both returns so as to make a single one and estimated the tax to be paid by the petitioner upon the basis of the rates fixed by said Acts for foreign citizens residing in Puerto Rico. The petitioner

was requested to pay the additional sum of $479.20 in two installments, the first one to be paid on or before September 15, 1941, and he was cautioned that if he did not pay within the set periods he would be assessed a surcharge of 1 per cent per month from the date of the demand.

The petitioner was not in agreement with the action of the Treasurer and filed a complaint in the Court of Tax Appeals on September 10, 1941, and on the same date he delivered to the Treasurer a certified check for the sum of $96.82, which in his opinion was the amount of the tax that he had to pay in accordance with the provisions of the said two amendatory Acts, taking as a basis for the same the separate returns of the husband and the wife and the rate applicable to American citizens residents of Puerto Rico.

While the complaint filed by the petitioner herein was pending in the Court of Tax Appeals, this court handed down its decision in *Ballester v. Court of Tax Appeals,* 61 P.R.R. 460, in which we decided, in agreement with the Treasurer's contention, "that the provision of §13 of Act No. 31, Laws of Puerto Rico, 1941, for a single joint return by husband and wife is not invalid in its application to the income reported by the petitioner and his wife for 1940"; and also decided, in agreement with the contention of the petitioner, Ballester, that the provision of the Income Tax Act, amended by Act No. 159 of 1941, insofar as it provided a higher tax rate upon the income of a resident alien than upon the income of a resident citizen, was unconstitutional and void, because it violated the provisions of the Organic Act for equal protection of the laws and uniformity of taxation.

As soon as the parties learned of our decision in the *Ballester* case, they stipulated that judgment be entered in accordance with what was therein decided; and the court so did. The Treasurer then filed a calculation of the tax, according to which the petitioner was required to pay $255.16, plus interest at the rate of 1 per cent month from August 18,

1941, the date on which the tax was assessed and notified, to the date of payment. This was opposed by the petitioner and his opposition was dismissed by the Tax Court, by an order entered on November 12, 1943. In this proceeding we are asked to reverse said order.

The petitioner contends that the "Notice and Demand" served on him by the Treasurer on August 18, 1941, is not a "deficiency" or a "jeopardy assessment," but an administrative decision, and that therefore §§ 57(f) and 59(b) of the Income Tax Act are not applicable. And he cites in support of his contention the decision of this court in *Ballester* v. *Court of Tax Appeals,* 60 P.R.R. 749.

The petitioner is correct. The facts in the present case are identical to those in the *Ballester* case and what was therein decided is fully applicable and should serve us as a standard for the decision of this controversy.

In the said *Ballester* case we decided that "a deficiency is the amount by which the tax imposed by the Income Tax Act exceeds the amount shown as the tax by the taxpayer upon his return" and that "the traditional deficiency comes into being, as already noted, by virtue of an examination of the taxpayer's return and a determination by the Treasurer that the taxpayer *at the time he made the return* owed an income tax larger, *under then existing law,* than he had reported and paid." If we apply this rule to the instant case we shall see that likewise there was not here a deficiency in the usual sense. The original returns filed on March 15, 1941, by the petitioner and his wife were correct in accordance with the Act then in effect. What is now requested from the petitioner is the payment of an additional tax authorized and imposed by Acts approved thereafter (Acts 31 and 159 of 1941) and which were given retroactive effect from January 1, 1940.

Neither is this a jeopardy assessment. From the record there does not appear that any emergency existed which would

922

justify or make it necessary for the Treasury to proceed by way of jeopardy assessment. On the contrary, by the "Notice and Demand" of August 8, 1941, the Treasurer himself notified the taxpayer that "if within the term of ten days, from this date, the sum of $239.60, amount of the first installment of the new tax due in accord with the above assessment is not paid, surcharges will be collected at the rate of 1 per cent monthly from the date of this demand." The admission on the part of the Treasurer that this was a new tax and that it could be paid by installments clearly show that what was notified to the petitioner on August 8, 1941, was not a deficiency or a jeopardy assessment, but an administrative decision within the meaning of §4 of Act No. 172 of 1941. This was decided in *Ballester v. Court of Tax Appeals, supra,* and we so decide in the instant case, since the facts are identical in both proceedings.

■■ We must now decide if, this being an administrative decision, the Treasurer is empowered to demand the payment of interest.

The petitioner's contention before the Court of Tax Appeals and now before us is that since in this proceeding there is not involved either a deficiency determined by the Treasurer or a tax fixed by the taxpayer himself in his return, the Treasurer therefore lacks authority to demand the payment of interest; and that even if it be determined that the notice and demand which gave rise to this proceeding referred to a deficiency, only interest at the rate of 6 per cent per annum could be collected from the date of the notice until the deficiency was definitely assessed.

In order to reach the conclusion that the taxpayer in this case is under the duty to pay the interest claimed by the Treasurer, the Tax Court made a great effort to distinguish the instant case from that of Ballester, by contending that our holding to the effect that the notice and demand served upon Ballester was neither a deficiency nor a jeopardy

assessment, but an administrative decision, was made "only for the purpose of passing upon the jurisdiction of the Court of Tax Appeals." After enclosing our decision within the narrow limits of the jurisdictional question, the Tax Court reached the erroneous conclusion that that which was not and could not be a notice of a deficiency for the purposes of the jurisdictional requisite of §57($a$) of the Income Tax Act, could and should be considered as a notice of a deficiency for the purposes of the imposition and collection of interest in accordance with §§ 57($f$) and 59($b$) of the same Act. A simple reading of our decision in the *Ballester* case should be enough to realize the error in the decision of the Tax Court.

The Income Tax Act imposes on the taxpayer the duty of paying interest only in two specific cases:

The first case is that in which the Treasurer notifies the taxpayer of a deficiency in accordance with the provisions of §§ 56 to 59, inclusive. Accordingly, § 57($f$) provides:

"($f$) Interest upon the amount determined as a deficiency, or, if the tax is paid in installments, upon the part of the deficiency prorated to each installment, shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the Treasurer, and shall be collected as a part of the tax, at the rate of 6 per centum per annum from the date prescribed for the payment of the tax, or the payment of such installment, to the date the deficiency is assessed."

When the deficiency has been assessed by the Treasurer, if the payment is not made within the period set by said officer, then interest at the rate of 1 per cent monthly shall be collected upon the amount due. This is provided by §59($b$) of the Act.

The second instance in which the Act imposes the duty of paying interest at the rate of 1 per cent monthly from the date on which the tax should have been paid is when the taxpayer himself has fixed in his return the amount of his

tax and does not pay it within the period fixed by the Act. This is provided by § 59(a) of the Income Tax Act.

Since there is no legal provision which would authorize the Treasurer in a case like the present to demand the payment of interest at the rate of 1 per cent monthly upon the amount of $255.16 that the petitioner was under the duty to pay in accordance with the calculations made by the Treasurer on September 20, 1943, the respondent tribunal erred in deciding that the Treasurer had a right to demand the payment of such interest.

Nevertheless, we are of the opinion, and we so hold, that the petitioner was bound to pay interest at the legal rate of 6 per cent per annum from August 18, 1941, the date on which demand was made upon him by the Treasurer, until the payment of $158.34, that is, upon the difference between the sum of $255.16 and the sum of $96.82, which the petitioner tendered in payment to the Treasurer by a certified check, drawn on the Royal Bank of Canada payable to said officer, which was returned to him by the Treasurer.

The petitioner could have avoided the liability of paying interest at the legal rate of 6 per cent upon the total amount of $255.16 by paying or placing said amount at the disposal of the Treasurer. Instead of doing this, the petitioner chose to retain said amount, offering to pay only the sum of $96.82, which was the amount that he thought he was under a duty to pay. It is just that he now pays interest at the legal rate upon the amount that during all that time he has retained. Under the circumstances of this case, the bond tendered by the petitioner to the Treasurer and which was not accepted by the latter, can not have the same legal effect that the cash payment or deposit of the amount claimed by the Treasurer and finally adjudicated by the Court of Tax Appeals. See §§ 1053 and 1061 of the Civil Code, 1930 edition.

The order appealed from is modified so as to provide that the petitioner must pay interest at the rate of 6 per cent per annum from August 18, 1941, until complete payment, but only upon the sum of $158.34; and as thus modified, said order is affirmed.